**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Civil Action No. 12-cv-02268-MSK**

**ROBERT H. BATES II,**

    **Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

    **Defendant.**[1]

## OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Robert H. Bates II appeal from the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.     Jurisdiction**

On September 29, 2010, Mr. Bates filed a claim for disability insurance benefits pursuant to Title II. He asserted that his disability began on April 14, 2010. His claim having been initially denied, Mr. Bates filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on April 19, 2011. The ALJ issued a decision on May 23, 2011 ("the Decision"), in which he determined that Mr. Bates was

---

[1] Michael J. Astrue was the Commissioner of Social Security at the time Mr. Sirio filed his appeal. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

not under a disability from April 14, 2010 to the Date Last Insured ("DLI") of September 30, 2010.

In following the five step process outlined in 20 C.F.R. § 404.1520, the ALJ found at Step 1 that Mr. Bates had not engaged in substantial gainful activity from April 14, 2010 to September 30, 2010. At Step 2, the ALJ found that Mr. Bates had the severe impairments of status/post right high tibial osteotomy with residual right knee osteoarthritis, status/post right knee arthroscopy for debridement and hardware removal, reactive airway disease, post-traumatic stress disorder (PTSD), and depressive disorder. The ALJ found at Step 3 that these impairments did not meet or equal one of the listed impairments in § 404, Subpt. P, App. 1. At Step 4, ALJ found that Mr. Bates had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in § 404.1567(a) except: Mr. Bates was not required to stoop more than occasionally; not required to climb, crawl, kneel, and balance; not required to sit for more than 45 minutes at one time without the opportunity to stand; not required to walk more than one block at one time without the opportunity to sit; not required to stand more than ten minutes at one time without the opportunity to sit; not required to stand/walk for more than one hour of an eight hour workday; not required to push or pull with the feet; not required to work at unguarded heights or near unguarded hazardous mechanical equipment; not required to be exposed to excessive dust, fumes, or gases more than incidentally on a rare basis; not required to have more than superficial interaction with co-workers; not required to interact with the public; not required to work at a strict production pace; and not required to understand, remember, and carry out more than simple instructions. The ALJ also found that Mr. Bates had past relevant work as a military infantryman, but that his limitations precluded him from performing that work. Finally, the ALJ

found at Step 5 that there was one job in the national economy, Document Preparer, that Mr. Bates would be able to perform given his age, education, work experience, and RFC.

Mr. Bates requested review of the ALJ's decision. This request was denied by the Appeals Council on July 12, 2012, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). The appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.     Issues Presented**

Mr. Bates raises three challenges to the Decision. He contends that: (1) the mental limitation in the RFC to simple instructions was inconsistent with the Step 5 job of Document Preparer that had a Reasoning Level of 3; (2) the ALJ failed to properly evaluate the Department of Veterans Affairs ("VA") Ratings of Total Disability and Individual Unemployability; and (3) there was not substantial evidence to support the finding that work as a Document Preparer, Microfilming, DOT 249.587-018, with 29,842 jobs in the U.S. economy and 238 jobs in Colorado, existed in significant numbers.

Thus, Mr. Bates challenges the ALJ's findings at Steps 4 and 5. At Step 4, the gravamen of his argument is that the ALJ erred in the RFC finding by not applying the correct legal standard in evaluating the VA records, and therefore that finding was not based on substantial evidence. At Step 5, he argues that the ALJ erred during consultations with the Vocational Expert ("VE"). First, the only job identified by the VE conflicted with the expressed RFC, and second, the job did not exist in significant numbers.

**III.    Material Facts**

Having reviewed the record in light of the issues, the material facts are as follows.

Mr. Bates was 36 years old at the time he claims an onset of disability. He had a high school education and work experience as a cashier, bouncer, construction worker, infantryman, and most recently, as an automotive technician. Mr. Bates was unable to continue that employment due to difficulties interacting with others caused by his PTSD and to complications from a knee injury, including surgeries, pain, swelling, and loss of mobility.

### A. Physical Impairments

Mr. Bates injured his right leg in 2003 and received treatment through the VA. He underwent four surgeries, the most recent of which was a knee arthroscopy and hardware removal on September 28, 2010. Mr. Bates wore a customized knee brace and orthotics to correct a difference in leg lengths. The knee joint was still bone on bone, however, which caused swelling, instability, and reduced motion. Mr. Bates reported severe, increased right leg pain after his final surgery. Mr. Bates also received a Synvisc injection for Grade IV Chondromalacia.[2] Mr. Bates inquired about a knee replacement but it was denied due to his young age. Finally, Mr. Bates was diagnosed and treated for Reactive Airway Disease and myofascial pain related to habitual teeth grinding. The VA determined that PTSD caused the latter.

Dr. Finch conducted a consultative physical examination on Mr. Bates in March 2010 and noted lung problems, back, leg, hip, and ankle pain, reduced range of motion in the right hip flexor and right knee, and a shortened right leg. Of note, the consultative exam was conducted prior to the September 2010 knee surgery that resulted in additional pain and limitations.

---

[2] Chondromalacia is diseased cartilage under the kneecap. Grade IV is the most severe of the four grades.

### B. Mental Impairments

Mr. Bates suffered from PTSD, which included flashbacks and depressive disorder. He reported withdrawing from people due to difficulty interacting with others. Treatment included medications, therapy, and a PTSD residential rehabilitation program. While there are no psychiatric inpatient hospitalizations, the record reflects a brief stay in jail due to conduct arising from anger over not getting his medications right away.

Dr. Hansen,[3] a VA psychologist, evaluated Mr. Bates on March 3, 2011 and found that he suffered from PTSD with depressive order, not otherwise specified ("NOS") and that he had a Global Assessment of Functioning ("GAF")[4] of 50. VA mental health records also reflected a GAF ratings of 50-55. Dr. Hansen noted concentration disturbance secondary to flashbacks, nighttime dreams, fatigue, constant irritability, negativity, anger with others, and difficulty completing tasks due to depression. Dr. Hansen further noted objective findings of panic attacks that were mild in severity, lasted just moments, and occurred twice a month. Finally, she noted moderate to severe anxiety, depression, and mild to moderate problems with impulse control. With respect to limitations on employment, Dr. Hansen opined, "Flashbacks and intrusive thoughts are frequent and severe right now and would interfere with any task or job that would require focus, concentration, or memory. His anger, irritability, lack of trust, and inability to

---

[3] The ALJ incorrectly identified Dr. Mary C. Hansen as M. Chasen in the Decision.

[4] GAF ratings are used by clinicians to assess an individual's overall level of functioning at one point in time. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text rev. 2000) (*DSM-IV*) at 32-34. A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34. A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

control what he says would make it difficult for him to work for employers, co-workers, and customers. His depression, loss of energy and motivation would make it difficult to attend school or complete complex tasks that require endurance and concentration. He is easily disturbed by noise and stimulation, making it hard to work in areas where that cannot be avoided."

Dr. Campbell conducted a consultative mental health examination in March 2010. She opined that Mr. Bates had generally appropriate behavior, sadness and depression, tearfulness, organized and clear thought processes. She further noted his ability to express anger appropriately, and his reports of irritability, tearfulness, difficulty sleeping, panic attacks three to four times per week lasting two minutes at a time, exaggerated startle response, hyper vigilance, and difficulty with relationships and trust. Dr. Campbell diagnosed PTSD with panic attacks, and assigned Mr. Bates a GAF rating of 60. She assessed that Mr. Bates could perform lower level semi-skilled work and that he would have moderate difficulties interacting with others.

### C. VA Reports

The VA issued disability rating decisions on January 10, 2011 and on April 18, 2011. In the January 2011 decision, the VA found that Mr. Bates: was unable to secure substantial gainful occupation; suffered from PTSD with depressive disorder NOS; and suffered from knee and leg problems. The VA determined a 100% disability rating because Mr. Bates was unable to work due to his service related disabilities.

Specifically, the VA granted a 50% PTSD disability rating from October 2010, the date the request was filed. The examiner diagnosed Mr. Bates with chronic post-traumatic stress disorder with depressive disorder, NOS. The examiner found current symptoms of hyper arousal with increased startle response, increased agitation and anger, intrusive thoughts and flashbacks,

nightmares, insomnia, depressed mood, anxiety, social isolation, an avoidance of talking about traumatic experiences.  The examiner assigned Mr. Bates a GAF of 60, noting: his two failed marriages; poor relationship with his children; no social relationships, activities, or friends; homicidal ideations; memory loss with difficulty remembering names and places; panic attacks occurring a couple of times per month; moderate, daily depression; severe, daily anxiety; and sleep impairment.

The VA also granted a 30% disability rating related to the right leg, and a temporary rating of 100% due to convalescence.  The examiner noted Mr. Bates's complaints of worsening knee pain following his fourth surgery, despite the use of a knee brace.  The VA also granted a 0% rating[5] for myofascial pain with bruxism and clenching and monthly compensation for being housebound.

In the April 2011 decision, the VA increased Mr. Bates's PTSD rating from 50% to 70% following the residential PTSD program.[6]  The rating was based in part on the psychological evaluation conducted by Dr. Hansen in March 2011.  Mr. Bates's combined disability rating was increased to 80%; his unemployability determination and 100% service connected disability were unchanged.

The ALJ summarized the VA reports in his Decision as follows.  "The VA has rated Plaintiff's right lower extremity impairment at 30 percent until September 28, 2010, when it was raised to 100 percent, until the latest January 1, 2011 rating at 30 percent.  Diagnosis on which this rating is based is residual instability right knee and leg length discrepancy associated with

---

[5] The VA found this condition to be related to PTSD.  The 0% rating provides a nexus from the dental condition to his service injuries, and the VA will provide medical care for the condition.

[6] As noted above, the VA rated Mr. Bates at 100% during the course of treatment.

arthritis, right knee, residual of high tibial osteotomy." And later, "[e]ffective February 1, 2011, Mr. Bates's VA impairment rating for PTSD was increased to 70%."

### D. Medical Record Review

Dr. Glasco reviewed the record in February 2011 in his function as a non-treating, non-examining state agency psychiatrist. He opined that Mr. Bates possessed the RFC to perform work of limited complexity, which required attention to detail; Mr. Bates cannot work closely with supervisors or coworkers, but can accept supervision and relate to coworkers if the contact is not frequent or prolonged.

## IV.    Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The ALJ must consider all relevant medical evidence in making those findings. *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). Therefore, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). The Court does meticulously

examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

Social Security is required to evaluate all the evidence in the case record that may have a bearing on Social Security's determination or decision of disability, including decisions by other governmental and nongovernmental agencies. § 404.1512(b)(5). Although disability decisions by other agencies are not binding on the Secretary, they are entitled to weight and must be considered. *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (citation omitted); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). If the ALJ's finding differs from the other agency's decision, the ALJ must explain why he did not find it persuasive. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005); *see also* § 20 C.F.R. § 404.1504 (defining the disability determinations of other agencies as evidence to be considered by the Social Security Administration). "[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (citation omitted).

**V.      Discussion**

Mr. Bates initially challenges the ALJ's finding at Step 4. He questions whether the ALJ applied the correct legal standard in determining the RFC, and whether his finding was based on substantial evidence. Specifically, Mr. Bates alleges that the ALJ failed to properly evaluate the Department of Veterans Affairs ("VA") Ratings of Total Disability and Individual

Unemployability because he did not explain the weight, if any, he gave to the VA decisions. Also, if the ALJ found the VA decisions unpersuasive, he did not explain his reasoning for that conclusion.

The VA issued disability determinations in January and April of 2011. The ALJ did not discuss the January 2011 determination in his Decision. The ALJ did mention the April 2011 determination in two portions of the Decision: (1) "The VA has rated Plaintiff's right lower extremity impairment at 30 percent until September 28, 2010, when it was raised to 100 percent, until the latest January 1, 2011 rating at 30 percent. Diagnosis on which this rating is based is residual instability right knee and leg length discrepancy associated with arthritis, right knee, residual of high tibial osteotomy"; (2) "Effective February 1, 2011, Mr. Bates's VA impairment rating for PTSD was increased to 70%."

The Commissioner acknowledges the ALJ should consider other agency opinions as it would any other evidence and that the ALJ did not discuss the January 2011 VA determination in his Decision, but asserts that there is no error because the VA determination was after the DLI of September 30, 2010. The ALJ did not provide this explanation, however. The Decision made no mention of the January 2011 VA determination, nor of the reason for excluding it. Mr. Bates correctly points out in his Reply, "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).[7] Therefore, the Court does adopt this post-hoc rationalization.

---

[7] *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process"); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004) (per curiam) (same); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

> Moreover, the law allows retrospective opinion, and for good reason:
>
> [E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

*Miller*, 99 F.3d at 977 (citation omitted). Such is the case here. Several pieces of evidence, including both VA disability determinations and Dr. Hansen's psychological evaluation report, were generated after the DLI. That evidence is pertinent, and should therefore be considered, because it "may disclose the severity and continuity of impairments existing before the earning requirement date." The evidence was generated relatively close in time to the DLI,[8] addresses the same impairments, and relates to the period in which Mr. Bates claims disability, i.e., prior to the DLI.

The Commissioner next asserts that any error made by the ALJ in not more thoroughly discussing the VA decisions was harmless. The Court disagrees. The harmless error analysis is applied "cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The "harmless error analysis 'may be appropriate to supply a missing dispositive finding. . . where, based on material the ALJ did at least consider, we [the court] could confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter any other way." *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

In this case, the ALJ failed to discuss the January 2011 decision. Because this was another agency's disability decision, he was required to do so. *See* § 404.1512(b)(5); *Baca*, 5

---

[8] As noted above, the DLI was September 30, 2010. The VA issued disability decisions in January and April 2011. Dr. Hansen conducted her evaluation in March 2011.

F.3d at 480 (citation omitted); SSR 06-03p, 2006 WL 2329939. Further, in addressing the April 2011 disability decision, the ALJ failed to discuss what were arguably the most important parts: the finding of unemployability, the finding of 100% disability, and the reasons for those findings. While the Commissioner is correct that VA disability determinations are based on a different standard than are Social Security disability determinations, he does not, and cannot, claim that the VA decisions are to be ignored. Furthermore, the VA decisions did not discuss unrelated impairments; rather, they addressed the exact impairments in the Title II Claim at issue. Therefore, the error was not harmless. This is not a situation where the Court can supply a missing dispositive finding, nor is it a situation where the court can confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way. *See Fischer-Ross*, 431 F.3d at 733 (citation omitted). Indeed, had the ALJ fully considered these decisions, he might have found a more restrictive RFC, which might have in turn affected the Step 5 analysis.

Because the Court remands due to error by the ALJ at Step 4 of the sequential evaluation process, it declines to address the Step 5 challenges, i.e., Issues (1) and (3).

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED**. The Clerk shall enter a Judgment in accordance herewith. Any request for costs or attorney fees shall be made within 14 days of the date of this Opinion and Order.

Dated this 27th day of September, 2013.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge